The next case for argument is docket 25-9559, Vizguerra-Ramirez v. Blanche. Counsel, please proceed when you're ready. May it please the Court, Mark Barr of Lichter Immigration for the petitioner. Ms. Vizguerra has a long history of public criticism of systemic violence and corruption both in Mexico and the United States. Her activism targeting abuses by the Mexican government, law enforcement, and cartel collusion has made her a visible and outspoken political dissident. Her beliefs and activism now make her a target for possible retribution from the Mexican government and the cartels it is unable and unwilling to control. To protect her from such a fate, Ms. Vizguerra has applied for withholding of removal and protection under the Convention Against Torture. What's the status of those proceedings? It's been argued but not decided? No, they're still ongoing in immigration court in withholding only proceedings. In fact, there's not even a date yet for the merits hearing. Things got slowed down as the result of a successful habeas petition, and so we don't yet have a merit state. And until last year, well, let me take a step back. Let me first say I hope Ms. Vizguerra wins those claims. I hope that she gets the protections that she seeks. But withholding can be hard to win, and it's distinctly possible that she loses. It's also possible that should she pursue her right to an agency appeal, she loses there. I believe Ms. Vizguerra would then like to seek judicial review of any denials of her claims for protection. And until last year, the path to that judicial review of those claims was clear. She had to wait. Under longstanding practice in this court, later clarified in two precedents from this court, one had to wait until any protection claims were finally resolved by the agency until they could file a petition for review, at which point both those protection claims and any challenges to the underlying removal order could be brought. But I guess the first issue for us is whether this petition is timely. Yes. And she had 30 days to file, and we all agree she's well beyond that. Yes. Okay. And so you're arguing for tolling, equitable tolling of that 30 days. As best I can tell, there is a circuit split on whether tolling is available at all. That's correct. Let's assume for purposes of argument that that tolling is available. We've got a situation here where the restatement order for your client was issued, I think, in 2013. That's correct. Which is well before our holding in Luna, right? It was two years prior to Luna, but prior to that, that was the accepted practice. So I believe in my briefing we have cases from that same time period in which the court found that a petition for review filed within 30 days after the conclusion of withholding or a CAT claim was timely. So it was understood to be the practice, and later, yes, that was clarified two years later in Luna. And it's clear that the same result would have occurred to Ms. Vizguerra had she, at that point, prematurely filed a petition for review of just the reinstatement order, just like they later did in Luna Garcia. The court would have said, you're knocking early on the courtroom door. These things are not completed until any withholding claims are fully disposed of. Well, just, I mean, just like somebody later challenged that decision, there was nothing that prevented her from making that argument prior to the Luna Garcia decision. Well, I would say that there was. There was prior practice in this court which said that the petitions were timely when filed within 30 days of the end of a withholding claim. She hadn't come to end of her withholding claim. One hadn't even started because of the unique circumstances of this case where, even though she was issued a putative reinstatement order in the summer of 2013, the government chose for many years not to execute that removal order, which had the effect of prolonging her reinstatement process. And it's at any point during that reinstatement process that she expresses a fear of return, which she has done. And she's shuttled into the withholding only proceedings. And again, that PFR clock, until last summer, only started ticking when those withholding proceedings had completed. Ms. Vizguerra had, well, we're now in the uncomfortable position where Ms. Vizguerra is both early and late. She's early with respect to a withholding claim where there isn't even a decision. We don't even know if there will be an adverse decision for which she could seek review. But she's late with respect to Riley's determination that the PFR clock starts ticking with the underlying removal order. She had good reason to challenge that removal order. I don't think she has a removal order. Her situation is somewhat unique. She was granted voluntary departure by an immigration judge. Yes, that voluntary departure came with an alternate order of removal. If she did not leave within the 60 days allotted by the immigration judge, then that voluntary departure grant would convert to a final order of removal. However, that immigration judge decision was held in abeyance because she pursued a timely appeal at the Board of Immigration Appeals, but the 60-day clock never started ticking. Prior to getting a decision on her appeal from the Board of Immigration Appeals, and this was an appeal of a cancellation denial, she had a family emergency in Mexico. Her mother was dying, and she left. Per regulation, that departure from the United States was deemed a withdrawal of her appeal. And there's a regulation which says if someone has filed a timely appeal and then departs prior to a decision, the immigration judge's order becomes final, quote, to the same extent as if no appeal had been taken. Well, would you say that she departed under an order of removal? I would not. And that's where I have some trouble, because there is an order of removal, and she was given, I think, 60 days to voluntarily remove. But nothing, that order never went away, even if it was paused. Correct. And when she left voluntarily, that order was still in place. So why is that? I agree that order was still in place, the voluntary departure order. If she leaves under an order of voluntary departure, she doesn't have a removal order. That's the advantage of a voluntary departure order. If she had litigated her appeal of her cancellation denial to completion, then the board, technically it's not guaranteed, but the board, it's common practice for the board to then reinstate the period of voluntary departure. And had she then left after the dismissal of her appeal within the 60 days, she would not have a removal order. So then, if she then left and came back unlawfully, lots of bad things could happen to her. She could be prosecuted for illegal entry, as she was. She could be put in removal proceedings. She could have an expedited removal order at the board. But what she couldn't have would be a reinstatement, because if she left pursuant to the terms of a voluntary departure order, then there was no removal order to be reinstated. So the question here is, when she departed and triggered that regulation, it's our contention that to be put back in the same position, to the same extent as if an appeal had not been taken, was to say at that moment she had 60 days to leave. Alternatively, but we don't even need to, you don't need to buy me on that argument, even taking the government's argument at face value, that that 60-day period of voluntary departure began retroactively, not on the date of departure, but on the date of the immigration judge's November 2011 decision, understand that it's the leaving that would have triggered, that would have caused that removal order to spring into existence. Not the removal order, but a voluntary departure order that she then would have retroactively overstayed, which converted into a removal order. But the reinstatement statute says you need to leave under a removal order. So even if her departure caused a removal order to spring into existence, that only happened after departure. At the time of her departure, even under the government's view, she couldn't leave under an order of removal. How much of this depends on the statutory language in lieu of? In which? In lieu of a removal order. It's extremely important. It's kind of black-letter immigration law, that if you comply with the terms of a voluntary departure order, you do not have a removal order. So you don't face whatever consequences there could be, most likely, or most notably, the ability to return. If you leave with a removal order, then there would be certain barriers to your future admission to the United States. But if you leave pursuant to the terms of a voluntary departure order, at least that barrier is stricken, it does not apply. So it's extremely important that somebody who is given a voluntary departure order in lieu of removal, they're being given a gift that could have advantages for them. They will not have a removal order if they comply. Can you speak to Batobura and the notion that the voluntary departure order contains a final removal order? Are we bound by that? I would agree with that, but it doesn't spring into existence until there's a failure to comply with the voluntary departure order. And so the issue here, well, one issue is, did she fail to comply when she left at the moment that her departure caused the immigration judge's voluntary departure with a removal order to spring back into existence? Well, didn't she already overstay the 60 days prior to when she left because of her mother's health? The judge didn't give a date certain. The judge said, I'm giving you 60 days. Had she not appealed, then it would have been the 60 days before the date of the judge's order. But she did appeal so that the judge's order was stayed during the appendency of her appeal. So when the regulation says, if you depart, it's as if your appeal had never been taken to the same extent. I think those words are equivalent. To the same extent as if no appeal had been taken. To me, to the same extent means, okay, the IJ's voluntary departure order springs back into existence. And now, if she doesn't leave within 60 days, it converts to a removal order. But, of course, in this case, she left. So she necessarily complied with that removal order. I'll reserve the balance of my time. Very well. Thank you. May it please the Court, Jacob Roth on behalf of Respondent. There are three independent grounds for denying this petition. The first is that the 1252B deadline is not subject to equitable tolling at all. The second is that, regardless, the petitioner would not qualify for equitable tolling. And the third is that if the Court were to reach the merits, the challenge to the reinstatement order fails. And because the 30-day deadline is not jurisdictional, the Court can resolve the petition, deny the petition on any one of those grounds. It doesn't have to go in a particular order. Well, let's start with equitable tolling. And let's presume for purposes of argument that she can toll. What's your best argument for why she does not qualify for equitable tolling? And the argument is that there was a long history of counting the 60 days, not from the original order, but from a later moment. So what's your response? My response is that at the time of this reinstatement order, this Court had not decided that question. And we know that because in Luna, two years later, this Court said this is a question of first impression in this circuit, and we're now going to decide it to provide guidance for future litigants. And Luna, the petitioner in Luna, of course, did file a petition for review from her, his or her, I don't recall, reinstatement order. That was one year after the reinstatement order of petitioner here. So clearly it could have been done. Now, petitioner says, well, we know how it would have turned out. It would have been dismissed as premature. But I don't think that's really the question for equitable tolling. The question for tolling is, was there some extraordinary circumstance that stood in the way of a petitioner who was otherwise diligently pursuing her rights? And I don't think they can make that argument here. Of course, as we later learned, circuits split over the question of what starts the 30-day clock. So it was clearly a debatable question that had to go all the way to the Supreme Court. At the time that matters here, which is July of 2013, it was an open question in the circuit. Nothing stood in petitioner's way of filing that. And so for that reason, we don't think that equitable tolling would apply. If there had been a circuit precedent on point that said, it's too early, you have to wait until later, it would be a very different case. And frankly, I'm not sure we would even be pressing the statute of limitations on those facts because it's very different from an equitable perspective. Okay, turn now to the merits. So assuming we say it's tolled and we get to the merits, this is a very complicated group of statutes. Walk us through your argument, please. Yeah, sure. So it turns on 1231A5, that's the reinstatement statute, and that provides for reinstatement when the alien has reentered illegally after having been removed or having departed voluntarily under an order of removal. And so we're focused on that latter phrase, or having departed voluntarily under an order of removal. The petitioner's argument is, she says, well, I departed under an order of voluntary departure, and therefore it wasn't under an order of removal. And we dispute both the premise and the conclusion. I'll start with the premise because I think that's probably the easier way of walking through it. Petitioner did not comply with the voluntary departure order because the voluntary departure order gave her 60 days to depart from the date of the IJ order. She appealed that, and so enforcement of that order was suspended. But the regulations provide that if the alien departs during the pendency of the BIA appeal, that is an abandonment of the appeal, and we are left with the order, quote, as though no appeal had been taken. That's 8 CFR 1003.4. So to me, what that means is we pretend no appeal had been taken. If no appeal had been taken, the 60 days ran from the date of the IJ order, which would have put the limit to depart in January 2012. She didn't depart until September of 2012. So it was not in compliance with the voluntary departure order that she got. This seems like a bit of a catch-22 in the sense that she's filed the appeal and she knows, based on the appeal, that the 60 days is stayed. So she doesn't have to leave yet to comply with the order. Then mom's sick, she decides to go back to her home country, and you say, well, that extension that she got due to the appeal disappears and she's in violation of the first 60 days. Seems a little inequitable, doesn't it? Well, what I would say is two things, Your Honor. The first is that if she had seen the appeal through and the BIA had denied the appeal, the BIA would have had discretion at that point to issue a new 60-day voluntary departure order or not. And what Petitioner's argument really amounts to is that she, by filing an appeal and then dismissing it at some point, can extend the 60 days that she was granted without the BIA weighing in at all. And so it's really usurping the power of the BIA to decide whether to issue a new voluntary departure order or not. Well, she rendered the BIA's action moot. I mean, she left. That's right. But my point is it's not an automatic. If you appeal, you keep your 60 days no matter what. If the appeal had gone to the end, the BIA would have said either that we dismiss your appeal, we deny your appeal, but you can have a new 60 days, or we're not giving you the 60 days. But she wouldn't have been in violation during the period of time, 60-plus days that the BIA is making its decision. And what you're saying is we're going to go all the way back and put her in violation on day 61, even though at that time an appeal was pending. That's correct, and that's what the BIA practice manual says about the deadlines, that if you dismiss the appeal, the 60-day period starts from the IJ order, not from the time you dismiss the appeal. It's not a new rule. And what we said in the brief is if she had wanted to ask the BIA to reinstitute the 60 days, the right way to do that would have been to file a motion with the BIA to withdraw the appeal and request the 60 days be reinstated, which she did not do. It requires some extrapolation. I follow your argument, and I understand what you're saying, but the statutes and regulations don't precisely decide that. You have to take one step, and that would mean this would mean that would be so she's out of luck. On a woman who's getting on an airplane supposedly with a dying mother, that's back to the word inequitable. Well, look, I can't argue that you do have to take the statute and then look at the regs and figure out how the regs interact with the statute under these circumstances. I do think the BIA practice manual is pretty explicit on this, and there's also case law. I mean, the Ninth Circuit's decision in Gallo is squarely on point, as petitioner can see. It's the same facts, and the Ninth Circuit said, excuse me, under these circumstances, the 1231A5 does apply, and you do get reinstatement under these circumstances. Now, actually, I read the Ninth Circuit to be broader, and so I would like to just pivot to that for a moment because I don't think the court needs to necessarily go broader, but I read the Ninth Circuit to say, even if you comply with your voluntary departure order, you're still subject to reinstatement because the statute does say or having departed voluntarily under an order of removal. What does that language mean, or having departed voluntarily? It seems to be a reference to voluntary departure. It's using the same language. And I take it on her reading, petitioner's reading, somebody who voluntarily departs, consistent with voluntary departure protocols, would never be subject to reinstatement under the statute, in which case I don't know why that language was put in there. So the Ninth Circuit's view is, departing voluntarily under an order of removal means if you went through removal proceedings and you got a final order at the end of the day from an IJ, and it provides for voluntary departure and alternatively for removal if you don't leave, and you leave, whether you're leaving consistent with that voluntary departure benefit or not, you have departed voluntarily under an order of removal because there is an order of removal, it's hanging over your head, you're departing voluntarily, and there's really no reason not to reinstate. The point of reinstatement is we already did this. We went through this process, we got to the end, we found you removable, we found you weren't eligible for the benefits you sought, and so we shouldn't have to do that again if you come back. And that fully applies in a situation where somebody complies with a voluntary departure order. And so that's, I think, the broader way of interpreting the statute that would cover this conduct regardless of whether we think she was technically in compliance or not by virtue of how these BIA regulations apply to the facts. And I might be missing the boat and just tell me if I am, but where I am is with Justice Scalia's dissent and data where he says, agree to depart voluntarily within the specified period of course, and you will not suffer detention. You can depart at your own convenience rather than ours, and you will not suffer the statutory restrictions upon reentry that accompany involuntary departure. Does that fit into this? So it may be that you're not subject to the illegal reentry statute. So there's generally criminal provisions for illegal entry and then for illegal reentry. So it may be that somebody who complies with voluntary departure doesn't get hit with illegal reentry. They would only get hit with illegal entry, which is a misdemeanor instead of a felony. So there are differences and there certainly are benefits, but for purposes of reinstatement, which specifically refers to somebody who departed voluntarily, I'm not sure that is a distinction that matters for purposes of this statute. Again, it does look like Congress was trying to get at people who leave voluntarily, and that language was added in 1996 as part of trying to make these procedures more streamlined and sort of avoid duplication of effort. If somebody has already reached the end of the road with an IJ, have a final order, chooses to leave, and then comes back illegally, we shouldn't have to do the whole thing again. That's really all that this comes down to in our view. I can turn back to our position on why tolling shouldn't apply at all, if the Court would like to hear that at all. There is a circuit split on it, as Judge McHugh noted. The Fifth Circuit says, no, it's mandatory. The Sixth Circuit has just said it's not mandatory. It's subject to tolling. I don't think the Court needs to decide it in this case because of the two other grounds for denial. But we do think the better reading is that it is a mandatory provision, and I would point to four indicia, none of which is really dispositive on its own, but I think together lead to the conclusion that Congress didn't intend for this deadline to be subject to tolling. First, the text is particularly mandatory in its formulation, more so than we see in many other statutes. It must be filed, not later than. Again, not on its own controlling, the Supreme Court has made clear, but it's certainly consistent with treating the statute as mandatory. The federal rule of appellate procedure is consistent with that in saying that with respect to petitions for review of agency orders, no extensions unless specifically authorized by law. That sort of comes from nutraceutical. The third indicator, the one I find most compelling is the neighboring subsection of 1252b, which provides the deadline for the brief, and there says it can be extended for good cause shown, you know, it can be excused if manifest injustice would result. You know, that's just two subsections. It's 1252b1 and 1252b3, and I think that contrast suggests that Congress didn't intend the initial case initiation filing to be subject to those types of equitable extensions. Similar to the analysis in Enbridge from a couple weeks ago from the Supreme Court. Not exactly the same, that was about, there the Court focused on there being other exceptions, and here I think it's an exception to a neighboring deadline that is instructive. And then last, the context, and this is a context where we have a large volume of these things that are filed and where we know that Congress was trying to make this relatively efficient and avoid prolonged litigation that tends to benefit those who want to stay in the country longer. Brockhamp is the Supreme Court case that I think is most analogous, that was a tax refund case, and the Court said, we don't think in that, when we're dealing with this number and the situation where we are prioritizing efficiency, we don't think Congress would have intended each one of these to be subject to equitable analysis, and I think that. What do you do with Boechler, I don't know quite how to pronounce it, that I think the Sixth Circuit relied on, where the Supreme Court says that Congress legislates with an understanding of common law principles such as tolling. Yeah, that's for sure true, and that's why we always are starting with the presumption of tolling in all these cases, but as the Supreme Court has said, that can be overcome, in Enbridge it was overcome, in Brockhamp it was overcome by this combination of textual and structural features and contextual features, and we think in this case, in this statute, those were cut against tolling. Thank you, Your Honors. Thank you. Five points, maybe six if I can get through them. Number one, let me be clear, if you're given voluntary departure and you comply with the terms of voluntary departure, you do not have a removal order, therefore you do not face a 10-year bar to returning under 1182A9A, you cannot be charged with illegal re-entry, and you cannot be given reinstatement if you come back illegally because you do not have a removal order. The reinstatement talks about being removed from the country and basically it divides it into two categories. People who are forcibly removed, they have a removal order and the government says we're hauling you out of here, and people who have the removal order but the government hasn't gotten around to executing that order and the person just decides to leave. They've voluntarily departed but under an order of removal. That's not the same as voluntarily departing under an order of voluntary departure, which protects you from all of the consequences of having a removal order. My friend said that the board has the discretion about whether or not to reinstate an immigration judge's grant of voluntary departure. True, but I will tell you it is exceedingly rare. It's as close as you can get to automatic that if an immigration judge has granted you voluntary departure, you pay the voluntary departure bond, the board will reinstate that at the end of your appeal. My friend has said that one solution for my client would have been to simply ask in the fall of 2012 for more voluntary departure. But remember under their theory, voluntary departure retroactively started in November of 2011 and expired in January 2012. So in September of 2012, she's already used up her 60 days under their theory. Under the statute, you can only get 60 days. She couldn't have asked for any more. It would have been unlawful. My friend has also said that the departure regulation says that the appeal is withdrawn as if no appeal had been taken. I think the precise language is important here. The precise language is to the same extent as if no appeal had been taken. And I think that encompasses the full panoply of things the immigration judge gave my client. In this case, voluntary departure with an underlying removal order that would have sprang into existence if she didn't leave within the 60 days. Finally, at the time of her reinstatement order in 2013, only one circuit had addressed when the deadline is when you have a reinstatement order and you're in withholding proceedings. That's Ortiz Alfaro in the Ninth Circuit. And they said you have to wait until those withholding proceedings are completed. In other words, the sole authority in the country at that time said she had to wait. But nothing from the temp? Only its practice. In practice, it was accepting tons of withholding cases and saying, oh, you're not late. You've correctly filed within 30 days of the withholding decision. Thank you. Thank you. You wasted one second, though. All right. Thank you, Counsel, for your arguments. Excellent briefing and arguments. Very much appreciated. The case is submitted and Counselor excused.